IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY FOSTER, | ) | CASE NO. 1:12 CV 1897 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Jeremy Foster, for supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Foster had severe impairments consisting of Williams Syndrome; attention deficit hyperactivity disorder, combined type; nonverbal learning disabilities, with some features of a pervasive developmental delay; an obsessive-compulsive disorder; and kyphoscoliosis.[1] He determined that none of these impairments or combination thereof met or medically equaled a listing in Appendix 1 of the regulations.[2] The ALJ made the following finding regarding Foster's residual functional capacity ("RFC"):

---

[1] Transcript ("Tr.") at 17.

[2] *Id.*

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of medium work. The claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk for 6 hours out of 8 hours and can sit without limitation. He can perform simple, routine-type work tasks, with no fast-paced or high production quota-type tasks. The claimant should have only occasional interaction with the public because of distractibility.[3]

The ALJ decided that Foster had no past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Foster could perform.[5] The ALJ, therefore, found Foster not under a disability.[6]

Foster asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. He presents three issues for judicial review:

- Whether the ALJ committed reversible legal error at step three of the sequential evaluation process by failing to address Foster's impairments under Listing 12.05C in light of his 70 performance IQ, proven deficits in adaptive functioning and impairments causing additional and significant work-related limitation of function?

- Whether the ALJ's assessment of Foster's residual functional capacity is supported by substantial evidence?

---

[3] *Id.* at 19.

[4] *Id.* at 21.

[5] *Id.* at 22.

[6] *Id.* at 23.

- Whether the ALJ's determination that Foster can engage in competitive, non-sheltered employment is supported by substantial evidence?

The Court concludes that the ALJ's finding of no disability lacks the support of substantial evidence and, therefore, must be remanded for reconsideration.

## Analysis

Foster is a young man, age 20 at the time of the hearing before the ALJ.[7] He is a high school graduate and has been home schooled.[8] His severe impairments are mental, most notably ADHD and obsessive-compulsive disorder.[9] He has an impairment known as Williams Syndrome, and that diagnosis is not in controversy.[10] This has caused him to have some developmental delay.[11]

For the most part, Foster functions normally. The ALJ found, consistent with evaluations by various medical sources, that Foster's impairments manifest themselves in moderate difficulties with concentration, persistence, or pace.[12] This case largely turns on the extent to which that impairment manifests itself in work-related limitations and capabilities,

---

[7] *Id.* at 1.

[8] *Id.*

[9] *Id.* at 17.

[10] *Id.* at 17, 230, 325, 400.

[11] *Id.* at 225, 400.

[12] *Id.* at 18.

as reflected in the RFC finding. In resolving Foster's challenge to the Commissioner's decision, I will address two issues for decision:

- The ALJ found that Foster's mental impairments did not meet or medically equal Listing § 12.10, which addresses pervasive developmental delay. Foster's counsel on judicial review argues that the mental impairments meet or medically equal Listing § 12.05C, mental retardation. Counsel for Foster did not argue § 12.05C at the administrative level. Did the ALJ err by not addressing § 12.05C in her decision?

- Foster contends that his impairment on concentration, persistence, and pace requires supervision in the workplace that would amount to an accommodation and sheltered work environment. The ALJ addressed Foster's mental impairments by a limitation to simple, routine-type work task, with no fast-paced or high production quota-type tasks. Does substantial evidence support the limitations adopted in the RFC by the ALJ?

The first issue involving step three is a troublesome one. Its resolution requires the application and interpretation of recent Sixth Circuit precedent and of several recent decisions that I have issued in analogous cases.

In *Reynolds v. Commissioner of Social Security*,[13] the court established guidelines for determining when an ALJ has an obligation at step three to articulate with respect to every impairment found severe at step two. As discussed in my report and recommendation in *Makan v. Commissioner of Social Security*,[14] the application of *Reynolds* in this district has been somewhat murky. As I observed, "[t]hese decisions (of the Northern District of Ohio

---

[13] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).

[14] *Makan v. Comm'r of Soc. Sec.*, No. 5:12 CV 31, 2012 WL 7688148 (N.D. Ohio Dec. 26, 2012).

after *Reynolds*) are not necessarily consistent and are somewhat difficult to completely reconcile."[15] Nevertheless, I discussed the Northern District of Ohio cases and attempted to make some sense of them.[16] I concluded that where counsel does not administratively argue a particular listing and asserts the listing for the first time on judicial review, the ALJ may rely upon the conclusion of the state agency reviewing medical sources that the claimant's impairments do not meet or equal a listing and, therefore, not further articulate.[17] Although Judge Gaughan eventually rejected my recommendation to affirm the Commissioner, she did so based upon error in the ALJ's step four analysis and did not take issue with my interpretation or application of the *Reynolds* precedent.[18]

By analogy, it would appear at first glance that *Makan* would provide a basis for affirming the Commissioner because Foster did not argue Listing § 12.05C administratively, and the opinions of the state agency medical sources support the finding that he did not meet or equal any listing. My decisions on *Reynolds* in the context of Listing § 12.05C lead to a different conclusion, however. In a series of three cases decided on consent in 2011 and 2012 – *Stearns ex rel. R.S. v. Commissioner of Social Security*,[19] *Lehman v. Commissioner of*

---

[15] *Id.*, at *3.

[16] *Id.*, at *3-4.

[17] *Id.*, at *4.

[18] *Makan v. Covlin*, No. 5:12 CV 31, 2013 WL 990824 (N.D. Ohio Mar. 7, 2013).

[19] *Stearns ex rel. R.S. v. Comm'r of Soc. Sec.*, No. 1:09 CV 1390, 2011 WL 1097638 (N.D. Ohio Mar. 22, 2011).

*Social Security*,[20] and *Roberson v. Commissioner of Social Security*,[21] I reasoned that where the record contains an IQ score meeting the requirement of the listing in § 12.05C, there is an affirmative duty on the part of the ALJ to address that listing and to articulate as to whether or not the claimant meets that listing. This is so even where the claimant has not argued § 12.05C administratively. That outcome relies heavily upon the decision of the Eastern District of Tennessee in *Isham v. Astrue*,[22] which in turn relies upon the Sixth Circuit's decision in *Abbott v. Sullivan*.[23] Cases involving § 12.05C, therefore, carve out an exception to the rule recognized in *Makan*.

Accordingly, applying these precedents, I must remand the case for consideration of Listing § 12.05C.

As to the second issue, the resolution resides in the proper interpretation and application of the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*.[24] *Ealy* addressed a situation where the ALJ has acknowledged moderate difficulty in a claimant's concentration, persistence, or pace caused by a mental impairment. According to *Ealy*, it is not enough for an ALJ to accommodate such an impairment by a limitation to unskilled,

---

[20] *Lehman v. Comm'r of Soc. Sec.*, No. 5:11 CV 14, 2012 WL 1097018 (N.D. Ohio Mar. 30, 2012).

[21] *Roberson v. Comm'r of Soc. Sec.*, No. 1:10 CV 2884, 2012 WL 1095953 (N.D. Ohio Mar. 30, 2012).

[22] *Isham v. Astrue*, No. 3:08 CV 423 2010 WL 1957362 (E.D. Tenn. June 13, 2010).

[23] *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990).

[24] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

simple, and routine work in certain circumstances. As with *Reynolds*, *Ealy* has spawned various precedents in this District that are not necessarily consistent. I discussed these precedents in *Raymond v. Commissioner of Social Security*.[25] This was a report and recommendation adopted in its entirety by Judge Nugent.[26]

Here the ALJ went beyond unskilled, simple, and routine work to add the limitation of no fast-paced or high production quota-type tasks.[27] Foster argues that this is not sufficient, given that a consulting examining psychologist, Dr. Litwin, opined that he needed "supportive employment" or "sheltered work place."[28] The ALJ gave Dr. Litwin's opinion significant weight.[29] She expressed disagreement, however, with his opinion as to supportive employment because of Foster's successful part-time work at McDonald's with a normal amount of supervision.[30]

I am inclined to affirm the ALJ's RFC finding on the basis of my analysis in *Raymond*. But Judge Gaughan rejected my report and recommendation in *Makan*, a case in which the ALJ went beyond the limitation to simple, repetitive work. This signals that

---

[25] *Raymond v. Comm'r of Soc. Sec.*, No. 1:11 CV 156, 2012 WL 2872152 (N.D. Ohio June 4, 2012).

[26] *Raymond v. Comm'r of Soc. Sec.*, No. 1:11 CV 156, 2012 WL 2872462 (N.D. Ohio July 12, 2012).

[27] Tr. at 19.

[28] *Id.* at 402.

[29] *Id.* at 21.

[30] *Id.*

analysis under *Ealy* and *Raymond* is nuanced and hinges on the factor of each case. Because this case is being remanded for the reasons explained above, the ALJ should reevaluate the RFC finding as to mental limitations, conscious that the additional allowances for fast-paced or high-production-quota tasks and for only occasional interaction may or may not be sufficient given the opinions of the multiple medical sources in this record.[31]

## Conclusion

Substantial evidence does not support the ALJ's finding at step three because the ALJ failed to analyze the evidence as related to Listing § 12.05C. The decision of the Commissioner denying Foster's application for supplemental security income is reversed. The case is remanded for reconsideration of the step three finding with analysis and articulation as to whether Foster's impairments met or equaled Listing § 12.05C. Further, on remand, the ALJ should reconsider whether the mental limitations in the RFC finding adequately compensated for Foster's acknowledged moderate difficulty with concentration, persistence, and pace.

IT IS SO ORDERED.

Dated: September 25, 2013

s/ William H. Baughman, Jr.
United States Magistrate Judge

[31] *Makan*, 2013 WL 990824, at *2.